**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| DR. ANNIE LIU,<br>　　　　*Plaintiff*<br><br>v.<br><br>TEXAS STATE UNIVERSITY, DR.<br>RAYMOND FISK, VICKI L. WEST, DR.<br>VISHAG BADRINARAYANAN, and DR.<br>DENISE T. SMART,<br>　　　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **A-18-CV-00938-LY** |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:　　THE HONORABLE LEE YEAKEL
　　　　UNITED STATES DISTRICT JUDGE

Before this Court are: Defendants' Motion to Dismiss for Plaintiff's Original Complaint filed on January 10, 2019 (Dkt. No. 6); Plaintiff's Response to Motion to Dismiss filed on March 1, 2019 (Dkt. No. 11); and Defendants' Reply filed on March 8, 2019 (Dkt. No. 12). On July 18, 2019, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. BACKGROUND

Dr. Annie Liu, Ph.D. ("Plaintiff"), who is 58 years old and of Asian descent, was an associate professor in the McCoy School of Business at Texas State University ("TSU") from 2014 to 2018. Plaintiff received her Ph.D. in Marketing from Georgia State University in 1998 and subsequently worked as an associate professor at several different universities before joining the faculty at TSU. Plaintiff alleges that in early 2014, while she was working as a tenured associate

professor at Victoria University of Wellington in Wellington, New Zealand, Dr. Raymond Fisk, Ph.D. ("Defendant Fisk"), the Chair of the Department of Marketing ("DOM") at TSU, recruited her to join the faculty at TSU. Plaintiff alleges that Defendant Fisk "promised Plaintiff tenure within a year or two of joining the faculty and that she would be the Research Director of the Sales Center[1] if she would resign her tenured position to join Texas State University." Dkt. No. 1 at ¶ 23. In June 2014, Plaintiff left Victoria University and began working as an associate professor in the DOM at TSU.

In November 2015, Vicki West ("Defendant West"), Director of the Sales Center, and two other faculty members interviewed Plaintiff for the position of Research Director of the Sales Center. Plaintiff contends that despite excelling in her faculty and research position, she did not receive the promotion. Plaintiff alleges that in August 2016, she told Defendant Fisk to stop berating Dr. Ruth Taylor, an elderly faculty member, at a DOM meeting. Plaintiff alleges that after she confronted Defendant Fisk at the meeting, "Defendant Fisk treated Plaintiff very differently and began to retaliate against Plaintiff after she stood up for Dr. Taylor." *Id.* at ¶ 50.

Plaintiff further avers that during the fall of 2016, the DOM was seeking re-accreditation with the University Sales Center Alliance ("USCA") for its Sales Center and re-accreditation was partially based on classroom size requirements. Plaintiff alleges that after a faculty meeting on August 25, 2016, Defendant West told Plaintiff that she had "to support what West was telling the USCA about these requirements; including West's representations that McCoy College of Business administration was meeting the class size requirements." *Id.* at ¶ 53. Plaintiff informed Defendant West and Dr. Vishag Badrinarayanan ("Defendant Badrinarayanan") that she "would not lie to anyone from USCA." *Id.* at ¶ 54.

---

[1] The "Sales Center" is the Center for Professional Sales in the DOM.

Plaintiff claims that after she told Defendants that she would not lie to the USCA, Defendants "began a pattern of retaliation" against her. *Id.* at ¶ 57.[2] Plaintiff alleges that after Defendant Fisk became aware that she was having marital problems, he asked her whether she could still perform her job duties because "she was so sad" and was acting like a "scorned woman." *Id.* at ¶¶ 60-61. Plaintiff further alleges that Defendant Fisk denied her permission to attend conferences in South Africa and Peru, although he had approved similar trips for her in the past and encouraged male and white female professors to attend such conferences.

Plaintiff also alleges that Defendant Fisk denied her request for a graduate teaching assistant. Plaintiff avers that male and white female professors who had requested graduate student assistants were granted their requests. Although Plaintiff was initially provided with an undergraduate teaching assistant, Plaintiff avers that Defendant Fisk eventually reassigned that assistant to another professor. As a result, Plaintiff contends that she was not able to teach her classes in the same way as she had planned. *Id.* at ¶¶ 79-87.

On November 16, 2016, TSU denied Plaintiff tenure and informed her that she would be terminated.[3] On December 12, 2016, Plaintiff alleges that she complained to TSU that she was being discriminated against because of her race, age and sex. Dkt. No. 1-A. On October 23, 2017, Plaintiff filed her Charge of Discrimination with the Texas Workforce Commission ("TWC") alleging that she was discriminated against and denied tenure because of her age, sex and race. Dkt. No. 1-A. Plaintiff received her right to sue notice from the TWC on June 30, 2018, and

---

[2] Although Plaintiff complains of retaliation and "whistle blower discrimination," she has asserted only a discrimination claim and not a separate retaliation cause of action under Title VII in this lawsuit.

[3] It is not clear when TSU officially terminated Plaintiff's employment. Plaintiff's Complaint does not state the date of Plaintiff's termination. Plaintiff states in her TWC Charge, which was filed on October 23, 2017, that she was still employed at that time, but notes that Defendants told her that she would be terminated in May 2018. *See* Dkt. No. 1-A.

received her right to sue letter from the Equal Employment Opportunity Commission ("EEOC") on August 29, 2018. *See* Dkt. Nos. 1-B and 11-1.

On November 1, 2018, Plaintiff filed this lawsuit against TSU, Dr. Risk, Ms. West, Dr. Badrinarayanan, and Dr. Denise Smart, Dean of the McCoy School of Business at TSU (collectively, "Defendants") alleging the following claims: (1) an equal protection claim under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, (2) an intentional race and gender discrimination claim under Title VII of the Civil Rights Act,[4] and (3) a Texas state claim of promissory estoppel.

In the instant Motion to Dismiss, Defendants argue that Plaintiff's lawsuit should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) based on sovereign immunity, qualified immunity, failure to exhaust administrative remedies, statute of limitations, and failure to state a claim.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the

---

[4] While Plaintiff alleged age discrimination in her TWC Charge of Discrimination, she has not pleaded age discrimination in the instant lawsuit.

party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. ANALYSIS

### A. Section 1983 Equal Protection Claim

In addition to alleging a discrimination claim under Title VII, Plaintiff's Complaint also alleges a claim under 42 U.S.C. § 1983 that Defendants deprived her of her right to equal protection of the laws under the Fourteenth Amendment by "unlawfully discriminating against her because of her race and gender." Dkt. No. 1 at ¶ 115-18. Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations omitted). To state a claim under § 1983, a plaintiff "must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). A plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Personal capacity suits seek to impose liability upon a government official as an individual while official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).

## 1. Eleventh Amendment Immunity

Plaintiff has brought this § 1983 lawsuit against TSU and the Individual Defendants in their official and individual capacity and seeks both monetary damages and prospective injunctive relief. Defendants argue that Plaintiff's § 1983 claims against TSU and the Individual Defendants are barred under the Eleventh Amendment.[5]

The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment codified the sovereign immunity of the states. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 253-54. "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

It is well-established that sovereign immunity applies not only to actions where a state is the named defendant, but also to actions against state agencies and state instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "[A] suit against an arm or instrumentality

---

[5] While sovereign immunity is often referred to as "Eleventh Amendment immunity," the Supreme Court has noted that such a phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). As the Supreme Court explained in *Alden*, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Id.* Regardless, courts continue to use "Eleventh Amendment immunity" and "sovereign immunity" interchangeably.

of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017).

"Similarly, lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent,' and they may also be barred by sovereign immunity." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). The Eleventh Amendment bars suits against state officials in their official capacity when "the state is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 (internal citations omitted). "The state is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the state to act or to refrain from acting." *Id.* Thus, the Eleventh Amendment bars lawsuits brought against state officials in their official capacity that seek monetary relief. However, under the Supreme Court's holding in *Ex parte Young*, 209 U.S. 123, 155–56 (1908), "[t]he Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law." *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996).

Under Texas Law, state universities such as TSU are considered agencies of the State of Texas that are entitled to sovereign immunity. *See* Tex. Gov't Code Ann. § 572.002(10)(B) (West 2017) (defining "a university system or an institution of higher education" as a "state agency"); Tex. Educ. Code Ann. § 96.41 (West 2013) (providing that TSU is part of the Texas State University System); *U.S. ex rel. King v. Univ. of Texas Health Sci. Ctr.-Houston*, 544 F. App'x 490, 495 (5th Cir. 2013) (noting that "Texas statutes consider 'a [public] university system or an institution of higher education' to be a 'state agency.'") (quoting Tex. Gov't Code Ann. § 572.002(10)(B) (West 2017)). Accordingly, TSU is "inarguably a state agency that is entitled to sovereign immunity." *Sissom v. Univ. of Texas High Sch.*, 927 F.3d 343, 348 (5th Cir. 2019)

(internal citations omitted); *see also Williams v. Univ. of Houston Downtown Police Dep't*, 2019 WL 2931669, at \*2 (S.D. Tex. June 18, 2019) ("Under Texas Law, state universities are agencies of the state and enjoy immunity under the Eleventh Amendment."), *report and recommendation adopted*, 2019 WL 2913765 (S.D. Tex. July 8, 2019). TSU has not consented to suit in this case and Congress has not expressly waived Eleventh Amendment immunity for § 1983 suits. *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). Accordingly, TSU is entitled to immunity from Plaintiff's § 1983 claims "regardless of the relief sought." *Pennhurst*, 465 U.S. at 100.

As noted, the Eleventh Amendment also extends "to state officials who are sued in their official capacity because such a suit is actually one against the state itself." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011). Accordingly, Plaintiff's § 1983 claims seeking monetary damages against the Individual Defendants in their official capacity are also barred.

Plaintiff's claims for prospective injunctive relief against the Individual Defendants in their official capacity, however, are not barred. As noted, under the *Ex parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective injunctive relief against a state employee acting in his official capacity. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). To decide if the *Ex parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Stewart*, 563 U.S. at 255.[6]

Defendants argue that the *Ex parte Young* exception does not apply in this case because Plaintiff is seeking only monetary damages in this case. *See* Dkt. No. 6 at p. 6. Defendants are

---

[6] The *Ex parte Young* exception only applies to suits for prospective injunctive relief against state officials and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

incorrect. In addition to monetary damages, Plaintiff's Complaint asks the Court to "order Defendants to reinstate Plaintiff's employment." Dkt. No. 1 at p. 20. The Fifth Circuit has expressly held that a claim for reinstatement of employment is a form of prospective equitable relief that falls within the doctrine of *Ex parte Young*. Specifically, the Fifth Circuit has stated:

> Plaintiff's claim for prospective relief (reinstatement), however, is not barred by sovereign immunity. The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law.

*Warnock*, 88 F.3d at 343 (citing *Ex parte Young*, 209 U.S. at 123); *see also Anderson v. Valdez*, 913 F.3d 472, 479 (5th Cir. 2019) (acknowledging that equitable remedy of reinstatement falls within *Ex parte Young*); *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008) (holding that district court erred in dismissing reinstatement claim because "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law").

Numerous other Courts of Appeals have also held that reinstatement is an equitable claim which falls under *Ex parte Young*. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96–98 (2d Cir. 2007); *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004); *Koslow v. Penn.*, 302 F.3d 161, 179 (3d Cir. 2002); *Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 842 (9th Cir. 1997); *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986). Accordingly, a claim for reinstatement is a form of prospective relief that may be brought pursuant to *Ex parte Young*.

Nonetheless, in order for the exception to apply in a particular case, the plaintiff must show that the named defendant possesses the authority to reinstate the terminated employee. *See Ex parte Young*, 209 U.S. at 157 (noting that the state official must have the power to perform the act

requested in order to overcome sovereign immunity).[7] Thus, in order for the *Ex parte Young* exception to apply in this case, Plaintiff would have to show that the Individual Defendants had the power to reinstate her. Plaintiff's Complaint fails to allege any facts showing that any of the Individual Defendants have the power to reinstate her.

Moreover, the Texas Education Code vests the power to "employ and discharge" with the Board of Regents of the Texas State University System, and the Board is not a party to this lawsuit. *See* Tex. Educ. Code § 95.21(a); *Ayers v. Romo*, 2012 WL 12872435, at *1 (W.D. Tex. March 19, 2012) (finding that only Board of Regents of the University of Texas system had the power to reinstate former associate professor). Because Plaintiff has failed to allege any facts showing that the Individual Defendants have the power to reinstate her, her claim does not fall within the *Ex parte Young* exception. *See Thomas v. Univ. of Miss.*, 2018 WL 6613807, at *4 (N.D. Miss. Dec. 17, 2018) (dismissing claim for reinstatement where plaintiff could not demonstrate that defendants had the power to reinstate him); *Joritz v. Univ. of Kansas*, 2018 WL 4906306, at *4 (D. Kan. Sept. 11, 2018), *report and recommendation adopted*, 2018 WL 4897047 (D. Kan. Oct. 9, 2018) (dismissing reinstatement claim "because there is no allegation that any of the individual defendants have the authority to provide the prospective relief sought"); *Ayers*, 2012 WL 12872435, at *1 (dismissing defendants because they were no longer on the board of regents and thus no longer had power to reinstate plaintiff); *Klein v. Univ. of Kansas Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (finding that *Ex parte Young* did not apply where none of the defendants had the power to reinstatement plaintiff). Accordingly, Plaintiff's claims for prospective injunctive

---

[7] Although the Parties did not address whether reinstatement falls under *Ex parte Young*, nor whether the Defendants had the power to reinstate Plaintiff, the Court may consider these issues *sua sponte* because they bear on this court's subject matter jurisdiction. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 465–66 (5th Cir. 1999).

relief against the Individual Defendants in their official capacity are barred by the Eleventh Amendment and must be dismissed.

### 2. Individual Capacity Claims

While Plaintiff's claims against the Individual Defendants in their official capacity are barred, the Eleventh Amendment does not bar Plaintiffs' claims against the Individual Defendants in their individual capacity. *See Lewis*, 137 S.Ct. at 1291 ("[S]overeign immunity does not erect a barrier against suits to impose individual and personal liability.") (internal quotations omitted). Defendants argue that these individual capacity claims should nevertheless by dismissed based on the statute of limitations, redundancy, and qualified immunity.

a. <u>Statute of Limitations</u>

Defendants argue that Plaintiff's claim under § 1983 is barred by the two-year statute of limitations period applicable to § 1983. Defendants are mistaken.

Because there is no specified federal statute of limitations for § 1983 suits, federal courts borrow the forum state's general personal injury limitations period. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). "In Texas, the pertinent limitation period is two years from the day the cause of action accrues." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). Accordingly, Plaintiff had two years to file suit from the date her claim accrued.

Although Texas law provides the applicable statute of limitations, "the standard governing the accrual of a cause of action under section 1983 is determined by federal law." *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). "Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient

information to know that he has been injured." *Piotrowski*, 237 F.3d at 576 (internal citations and quotation marks omitted). As the Fifth Circuit explained:

> A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim. Actual knowledge is not required if the circumstances would lead a reasonable person to investigate further.

*Id.*

Defendants argue that Plaintiff's claim accrued on August 25, 2016, when Plaintiff told the Defendants that she would not lie to USCA. While Plaintiff alleges that a "pattern of retaliation" began sometime after this date, Plaintiff was not denied tenure until November 16, 2016. The primary injury Plaintiff alleges in this lawsuit is that she was denied tenure and ultimately fired. Accordingly, the Court finds that the two-year statute of limitations began to run in this case on November 16, 2016, when Plaintiff was denied tenure. *See Del. State College v. Ricks*, 449 U.S. 250, 258-89 (1980) (holding that the applicable limitations periods under Title VII and § 1981 began to run when the plaintiff was denied tenure). Thus, Plaintiff had until November 16, 2018 to file her § 1983 claims. Because Plaintiff filed her lawsuit on November 1, 2018, her § 1983 claim is not barred by the statute of limitations.

b. Can Plaintiff Bring an Equal Protection Claim?

Defendants argue that Plaintiff's equal protection claim under § 1983 should be dismissed because "Plaintiff is attempting to bootstrap her Title VII claims against Defendant into a civil rights claim." Defendants argue that "[w]hen Congress enacts a comprehensive remedial scheme, such as Title VII, a plaintiff must bring suit under that scheme" and "[f]or this reason alone, Plaintiff's Section 1983 claim should be dismissed as redundant." Dkt. No. 6 at p. 14. Defendants' argument is foreclosed by precedent.

The Fifth Circuit has acknowledged that § 1983 and title VII are "parallel causes of action," and thus "the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (internal citations omitted). However, the Fifth Circuit has expressly rejected the argument that claims under § 1983 are precluded by Title VII. In *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 549-50 (5th Cir. 1997), the Court reasoned the following:

> [C]ourts have found that a public sector employee may assert claims of racially discriminatory employment practices under both Title VII and section 1983, because the Constitution provides a right independent of Title VII to be free from race discrimination by a public employer. In this case, plaintiffs alleged sexual harassment and sex discrimination by their public employer. Sex discrimination and sexual harassment in public employment violate the Equal Protection Clause of the Fourteenth Amendment. The circuits addressing the issue have allowed plaintiffs suing their public employers for sexual harassment and sex discrimination to assert claims under both Title VII and section 1983. Plaintiffs' allegations of sex discrimination and sexual misconduct assert claims under sections 1983 and 1985(3) that are not preempted by Title VII. (internal citations omitted).

Accordingly, Plaintiff's equal protection claim is not preempted by Title VII.

Defendants also argue that Plaintiff is precluded from asserting an equal protection claim against the Individual Defendants in this case because she was a public employee. Defendants rely on the Supreme Court's decision in *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), in which the Court held that the so-called "class-of-one" equal protection claim should not be permitted in the public employment context. In a class-of-one equal protection claim, the plaintiff alleges that she was fired not because she was a member of an identified class (unlike in race, sex, and national origin claims), but simply for arbitrary, vindictive, and malicious reasons. The

Supreme Court found that "ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly constitutionalize the employee grievance." *Id.* at 609.

Here, Plaintiff is not asserting a class-of-one equal protection claim, but rather a conventional equal protection claim based on her race and sex, which is not precluded under *Engquist. See Rountree v. Dyson*, 892 F.3d 681, 685 n. 9 (5th Cir.) ("Of course, an allegation 'bas[ed] o[n] race or sex would state an equal protection claim, because such discriminatory classifications implicate basic equal protection concerns.'") (quoting *Engquist*, 553 U.S. at 604), *cert. denied*, 139 S. Ct. 595 (2018). Accordingly, Defendants' reliance on *Engquist* is misplaced.

c. Qualified Immunity

Finally, Defendants argue that the Individual Defendants are entitled to qualified immunity as to Plaintiff's § 1983 claims against them in their individual capacity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Once invoked, a plaintiff bears the burden of rebutting qualified immunity by showing that: (1) the officials violated a statutory or constitutional right, and (2) the right was "'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*) (*per curiam*) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."). Law is "clearly established" for these purposes only if "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). An official who violates a

constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). At bottom, a plaintiff must show that "no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Thus, to overcome the qualified immunity defense, Plaintiff must first demonstrate a violation of constitutional right. Plaintiff asserts that the Individual Defendants violated the Equal Protection Clause by denying her tenure because of her race and sex. In order to establish a prima facie case of racial discrimination under § 1983, Plaintiff must demonstrate that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse action by TSU; and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group. *Caldwell v. Lozano*, 689 F. App'x 315, 321 (5th Cir. 2017).

Plaintiff fails to make out a prima facie case of race discrimination under § 1983 because she fails to show that she was replaced by someone outside her protected class or identify a similarly situated employee outside her protected group who was not terminated. *See Prescott v. Bd. of Sup'rs of the Univ. of Louisiana Sys.*, 2014 WL 4825332, at *6 (E.D. La. Sept. 26, 2014) (dismissing race discrimination claim where plaintiff failed to allege that he was replaced by someone outside the protected group); *Williams v. City of Port Arthur, Texas*, 2012 WL 1997867, at *13 n.7 (E.D. Tex. June 1, 2012) (finding that plaintiff failed to allege prima facie case of race discrimination where he did not allege he was replaced with someone outside his protected class).

In addition, while Plaintiff alleges that she was treated less favorably than other similarly situated professors, Plaintiff must allege sufficient facts to show that the officials "singled out a particular group for disparate treatment and selected [their] course of action at least in part for the

purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988) (internal quotations omitted); *see also Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992) ("To succeed in his equal protection claim Muhammad must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated."). Other than her conclusory allegations that she was discriminated against because of sex and race, Plaintiff has failed to allege any factual allegations that would support such claims. Accordingly, Plaintiff has failed to allege sufficient facts to show a constitutional violation and therefore the Individual Defendants are entitled to qualified immunity as to Plaintiff's equal protection claim under § 1983.

### B. Title VII Claim

Plaintiff alleges that TSU and the Individual Defendants discriminated against her in the terms and conditions of her employment in violation of Title VII of the Civil Rights Act. Defendants argue that Plaintiff's Title VII claim should be dismissed against all Defendants for failure to exhaust her administrative remedies. Defendants further argue that the Individual Defendants should be dismissed because the Individual Defendants are not "employers" under Title VII.

#### 1. Exhaustion of Administrative Remedies

Title VII of the Civil Rights Act provides for private causes of action arising out of employment discrimination and gives federal courts subject matter jurisdiction to resolve such disputes. *See* 42 U.S.C. § 2000e-5(f). Employees seeking relief under Title VII must exhaust their administrative remedies before filing suit by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful conduct, or within 300 days if the party initially institutes proceedings with a state or local agency with the authority to review such claims. 42 U.S.C.

§ 2000e-5(e)(1). Once the EEOC issues a right-to-sue letter to the party who filed the charge, that party has ninety days to file a Title VII action in the district court. 42 U.S.C. § 2000e-5(e)(1) & (f)(1).

"Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). Thus the "administrative exhaustion requirement is not a jurisdictional bar to suit." *Davis v. Fort Bend Cty.*, 893 F.3d 300, 306 (5th Cir. 2018), *aff'd*, 139 S. Ct. 1843 (2019). Instead, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Id.* at 307.

In their Motion to Dismiss, Defendants argue that Plaintiff's Title VII claim should be dismissed for failure to exhaust her administrative remedies because Plaintiff has only attached to her Complaint a right to sue letter from the TWC, not the EEOC. *See* Dkt. No. 6 at p. 9-10. Because she failed to attach a right to sue letter from the EEOC, Defendants argue that Plaintiff has failed to demonstrate that she exhausted her remedies with the EEOC. Defendants further argue that the right to sue letter from the TWC was dated June 30, 2018, and thus Plaintiff's lawsuit was filed "well outside the of the 90 day limitations period." Dkt. No. 6 at p. 10.

In Response, Plaintiff has submitted to the Court her right to sue letter from the EEOC dated August 29, 2018, informing her that she had 90 days from the date of the letter to file suit. *See* Dkt. No. 11-1 at p. 4. Thus, Plaintiff had until November 27, 2018, to file this lawsuit. Plaintiff filed this lawsuit on November 1, 2018. Accordingly, Plaintiff exhausted her administrative remedies with the EEOC and timely filed this lawsuit. Accordingly, Defendants' argument that Plaintiff's claims should be dismissed on this basis is without merit.

## 2. Individual Defendants are Not Liable under Title VII

In addition to bringing her Title VII claims against TSU in this case, Plaintiff also has brought them against the Individual Defendants in their individual capacity. However, Title VII permits recovery only against an "employer." *See* 42 U.S.C. § 2000e-2(a) ("[i]t shall be an unlawful employment practice for an employer" to discriminate against an employee). Title VII defines an "employer" as a "person in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). A "person" "includes one or more individuals, governments, governmental agencies, [or] political subdivisions." 42 U.S.C. § 2000e(a).

The law in this circuit is clear that supervisors or fellow employees are not considered employers under Title VII and thus cannot be held individually liable under Title VII. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) ("[R]elief under Title VII is available only against an employer, not an individual supervisor or fellow employee."); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) (dismissing plaintiff's claims against the individual defendants because "[i]ndividuals are not liable under Title VII in either their individual or official capacity."); *Thomas v. Choctaw Mgmt./Servs. Enter.*, 313 F.3d 910, 911 (5th Cir. 2002) (holding that supervisor's status as employee of employer prevented her from being an "employer" for purposes of potential liability under Title VII).

Plaintiff attempts to rely on the Supreme Court's opinion in *Vance v. Ball State Univ.*, 570 U.S. 421 (2013), to argue that the Individual Defendants should be considered employers under Title VII because they are supervisors. In *Vance*, the Supreme Court held that an employee may be considered a "supervisor" for purposes of holding the employer vicariously liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim. *Id.* at 450. Thus, the Court was addressing under what circumstances the *employer* could

be held liable under Title VII based on the actions of employee-supervisors. The Court did not hold that a supervisor is an employer and therefore liable under Title VII. Plaintiff's reliance on *Vance* is misplaced.

Accordingly, Plaintiff's Title VII claims against the Individual Defendants should be dismissed from this lawsuit as the Individual Defendants "are not liable under Title VII in either their individual or official capacity." *Ackel*, 339 F.3d at n.1.

    3.   <u>Defendant TSU</u>

Defendants have not moved for the dismissal of Plaintiff's Title VII claims against TSU on any other basis except the exhaustion of remedies argument which the Court has found meritless. Accordingly, Plaintiff's Title VII claim against TSU remains pending in this lawsuit.

**C. Claim for Promissory Estoppel under Texas Law**

Plaintiff also has asserted a claim under Texas law for promissory estoppel against the Defendants. Plaintiff alleges that Defendant Fisk made a promise to Plaintiff that if she left her position as a tenured professor in New Zealand and came to work for TSU, "she would be on track for a tenured position." Dkt. No. 1 at ¶ 134. Plaintiff contends that "Defendant Fisk is bound to the promise it made to Plaintiff." *Id.* at ¶139.

Defendants argue that Plaintiff's state law claim of promissory estoppel should be dismissed based on sovereign immunity. The Court agrees.

In *Pennhurst,* Supreme Court explained:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. at 106. "Thus, where litigants accuse state officers of violating state common law when acting in the course and scope of their employment, the Eleventh Amendment prevents the litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief." *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990).

Therefore, Plaintiff's promissory estoppel claim against TSU and the Individual Defendants in their official capacity are barred by the Eleventh Amendment. *See Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 648 (S.D. Tex. 2014) ("Texas courts have uniformly held that as a matter of law contract and quasi-contract claims such as promissory estoppel and quantum meruit are barred by sovereign immunity."). Any claims against the Individual Defendants in their official capacity would also be barred because "*Pennhurst* bars such a suit in federal court since the action seeks recovery from the state based on the violation of state common law by the state's agent." *Hughes*, 902 F.2d at 379. Accordingly, Plaintiff's state law claim of promissory estoppel should be dismissed from this lawsuit.

**D. Conclusion**

In summary, Plaintiff's equal protection claims under § 1983 against Defendant TSU and the Individual Defendants in their official capacity are barred by sovereign immunity. The Individual Defendants in their individual capacity are entitled to qualified immunity with respect to Plaintiff's equal protection claims. All of the Defendants are entitled to sovereign immunity with respect to Plaintiff's state law claim of promissory estoppel. Finally, the Court finds that Plaintiff's Title VII discrimination claim should be dismissed against the Individual Defendants in this case, but remain pending against Defendant TSU.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Original Complaint (Dkt. No. 6) is **GRANTED IN PART** and **DENIED IN PART**. The undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss Plaintiff's equal protection claims under 42 U.S.C. § 1983 and state law claim of promissory estoppel based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The Court **FURTHER RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss Plaintiff's Title VII discrimination claims against the Individual Defendants under Rule 12(b)(6), but **DENY** the Motion to Dismiss with respect to Defendant Texas State University. **IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428– 29 (5th Cir. 1996) (en banc).

**SIGNED** this 12th day of August, 2019.


_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE